1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9              FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11   EDWARD GRANILLO,                    Case No. 1:20-cv-01614-CDB
12                    Plaintiff,
                                         ORDER RE: MOTION FOR APPROVAL OF
13          v.                           PAGA SETTLEMENT

14   WEATHERFORD U.S., L.P., *et al*.    (Doc. 23)
15                    Defendants.
16

17          Before this Court is Plaintiff Edward Granillo's ("Plaintiff") motion for approval of

18   settlement pursuant to the California Labor Code Private Attorneys General Act of 2004

19   ("PAGA").  (Doc. 23).[1]   The motion is unopposed.  (Doc. 25).  Accordingly, the motion is ripe

20   for review.

21   **Procedural Background**

22          Defendant Weatherford U.S., L.P. ("Weatherford") is a Louisiana limited partnership

23   authorized to and doing business in Kern County, California.  (Doc. 5 at ¶ 10).  Plaintiff was

24   employed by Weatherford during the PAGA Period as a non-exempt employee in Kern County,

25   California.  *Id*. at ¶ 8.  On October 12, 2020, Plaintiff submitted notice to the California Labor

26   and Workforce Development Agency ("LWDA") of his intent to seek civil penalties under PAGA

27   ───────────────
     [1] On May 30, 2023, the parties consented to the jurisdiction of the United States
28   Magistrate Judge and the action reassigned to Magistrate Judge Christopher D. Baker for all
     purposes pursuant to 28 U.S.C. § 636(c)(1).  (Doc. 31).

1  for violations of the California Labor Cal. Lab. Code §§ 201, 202, 203, 204, 210, 226, 226.3,

2  226.7, 227.3, 510, 512, 1174, 1194, 1194.2, 1197, 1197.1, 1198, and 2802, among other

3  provisions of the California Labor Code.  (Doc. 23-1 at ¶ 14).

4         On October 14, 2020, Plaintiff filed a class action complaint in the Superior Court of

5  California for the County of Kern.  (Doc. 1-1); *Granillo v. Weatherford U.S., L.P., et al*, No.

6  BCV-20-102386.  Specifically, Plaintiff alleged Defendant:

7

8         (1) failed to pay minimum wages; (2) failed to pay overtime wages; (3) failed to provide
       compliant rest periods and/or pay missed rest period premiums; (4) failed to provide
9         compliant meal periods and/or pay meal period premiums; (5) failed to reimburse business
       expenses; (6) failed to pay accrued vacation wages; (7) failed to provide complete and
10        accurate wage statements; (8) waiting time penalties; (9) failure to pay timely wages; and
       (10) violations of the unfair competition laws.

11

12  (Doc. 1-1).  On November 13, 2020, Plaintiff's action was removed by Defendant to this Court.

13  (Doc. 1).  On January 22, 2021, Plaintiff filed a first amended complaint to add one cause of

14  action seeking penalties pursuant to PAGA for the violations underlying wage-and-hour claims of

15  the original complaint and removed all class claims based on an arbitration agreement with

16  Defendant.  (Docs. 5, 23-1 at ¶ 15).  Jonathan Melmed, Esq. (hereinafter "Counsel for Plaintiff"),

17  counsel for Plaintiff, estimated Defendant's "total realistic exposure" for PAGA penalties is

18  $385,750.  (Doc. 23-1 at ¶ 35).  Thereafter, the parties agreed to participate in mediation and

19  exchanged discovery.  *Id*. at ¶ 16.  Counsel for Plaintiff reviewed Defendant's policies and

20  Plaintiff's employment records, analyzed, researched, and investigated potential issues related to

21  the case.  *Id*.

22         On October 19, 2021, the parties engaged in mediation with the assistance of mediator

23  Steve Pearl, Esq.  *Id*. at ¶ 17.  The parties, with the assistance of the mediator, reached an

24  agreement to resolve the case in a PAGA settlement.  *Id*.  On November 17, 2021, the parties

25  executed a settlement term sheet memorializing the broad terms of the agreement they reached

26  during the mediation.  *Id*.  On January 7, 2022, the parties filed a joint notice of settlement to this

27  Court.  (Doc. 21).  On March 21, 2022, the parties finalized the terms of the Settlement

28  Agreement and executed the long-form Settlement Agreement subject to this Court's approval.

1  (Doc. 23-1 at ¶ 17).  On June 7, 2022, Plaintiff filed the instant motion to approve the parties'

2  PAGA settlement.  (Doc. 23).

3  **Proposed PAGA Settlement**

4        According to the parties' proposed PAGA Settlement Agreement, Defendant will pay a

5  gross settlement payment of $325,000 to resolve Plaintiff's PAGA claims as well as attorneys'

6  fees and costs related to the PAGA claim.  *Id*. at 11, 15.  Subject to court approval, the gross

7  settlement payment will include: (1) PAGA Counsel's reasonable attorneys' fees of up to

8  $108,333.33; (2) PAGA Counsel's request for allowable costs of up to $20,000; (3) reasonable

9  settlement administration costs estimated to be $3,000[2]; and (4) a representative award of $7,500.

10 (Doc. 23-1 at 37).  Plaintiff proposes to use ILYM Group, Inc. as the settlement administrator.  *Id*.

11 at 28-29.

12       The remaining amount from the gross settlement payment shall be "designated as the

13 'General PAGA Penalty Fund,' which is estimated to be $186,166.67."  *Id*.  The general fund is

14 to be divided 75 percent to the Labor and Workforce Development Agency ("LWDA") and 25

15 percent to the "Aggrieved Employees".  *Id*.  The settlement defines the "Aggrieved Employees"

16 as "all current and former non-exempt employees employed in California by Weatherford

17 between October 12, 2019, through and including December 31, 2021."  *Id*. at 32.  The settlement

18 notes there are approximately 191 "Aggrieved Employees."  *Id*. at 2.

19       The "Aggrieved Employees" shall receive a pro rata value equal to the 25 percent share of

20 the general fund, multped by the quotient of (1) the number of Eligible Pay Periods worked by

21 that Aggrieved Employee during the applicable Covered Period divided by (2) the total number of

22 Eligible Pay Periods worked by all Aggrieved Employees during the Covered Period.  *Id*. at 37.

23 Defendant represents that the Aggrieved Employees worked approximately 6,180 pay periods

24 between October 12, 2019, and August 17, 2021.  *Id*. at 40.  If the number of pay periods worked

25 between those dates exceeds more than 10% of the proffered 6,180 weeks, then the Total

26 Settlement Amount shall be increased proportionately for each additional pay period worked.  *Id*.

27

28

      [2] The parties agree if the settlement administration costs exceed the estimated amount, the additional amount will be paid through a downward adjustment to the General PAGA Penalty Fund.  (Doc. 23-1 at 37).

1     Within 30 calendar days after the entry of judgment approving the PAGA settlement,

2  Defendant shall compile a list of all Aggrieved Employees containing the following: (1) name, (2)

3  last known home address and telephone number, (3) number of pay periods as an Aggrieved

4  Employee during the covered period, and (4) each Aggrieved Employee's social security number.

5  *Id*. at 42.  Defendant shall provide this list to the settlement administrator.  *Id*.  Within 45 calendar

6  days after the entry of judgment approving the PAGA settlement, Defendant shall fund the gross

7  settlement amount in a qualified settlement account administered by the settlement administrator.

8  *Id*.

9     The "Effective Date" of the settlement will be the date when the judgment of this Court

10  becomes "final."  *Id*. at 33.  A final judgment shall mean (1) the date that the time to appeal the

11  judgment entered in the litigation approving the PAGA settlement has expired; or (2) the date on

12  which any appeal of the judgment entered in the litigation has been fully and finally resolved in a

13  way that approves and does not alter the terms of the settlement.  *Id*. at 33.

14     The settlement administrator shall distribute all payments due under this settlement

15  (except the amount allocated to settlement administration costs) within 10 business days after the

16  "Effective Date," provided that such date has occurred.  *Id*. at 43.  If the Effective Date has not

17  occurred within 30 days of the deadline to find the qualified settlement account, the settlement

18  administrator will return the gross settlement amount to Defendant, and Defendant shall not be

19  required to fund the qualified settlement account until the Effective Date occurs.  *Id*.

20     The settlement administrator shall send payment checks for each Aggrieved Employee by

21  U.S. First Class mail, along with a letter agreed upon by the parties explaining the settlement.  *Id*.

22  "It will be conclusively presumed that an Aggrieved Employee's individual settlement payment

23  check was received if the payment check has not been returned within [30] days of the original

24  mailing of the payment check."  *Id*.  Settlement checks shall remain valid and negotiable for 120

25  days from the date of their issuance.  *Id*. at 43.  Funds represented by settlement checks returned

26  as undeliverable and those settlement checks remaining un-cashed for more than 120 days after

27  issuance will be tendered to the State Controller's Office, Unclaimed Property Division, in the

28  name of the affected Aggrieved Employee.

The settlement provides that, upon entry of the court's order approving the settlement:

> Plaintiff, the State of California on whose behalf Plaintiff has brought the Litigation, and all the Aggrieved Employees will be forever barred from pursuing against Defendant and Defendant Releases any and all claims for civil penalties under PAGA arising during the applicable Covered Period that were alleged in the Litigation or any associated LWDA submissions by Plaintiff, or that could have been alleged based on the facts alleged in Plaintiff's Complaint in the Litigation or any associated LWDA submission by Plaintiff. The claims released by this PAGA Settlement therefore include all claims for civil penalties and associated fees or costs related to claims for unpaid regular or premium wages (as defined by the Labor Code), meal/rest period violations and/or premium payments for meal and/or rest period violations, wage statement violations, wage payment timing violations, record-keeping violations, and to the extent not covered above, any and all claims pied in the Litigation or the associated notices to the LWDA, including without limitation all associated claims for civil penalties and associated fees or costs related to alleged or actual violations of Labor Code sections 201, 202,203,204,210,226,226.3, 226.7, 510, 512, 558, 1174, 1185, 1194, 1194.2, 1197, 1197.1, 1198,1199, 2802, 2804, and 2699. The Aggrieved Employees, other than the Plaintiff by executing the Individual Settlement Agreement, will not be deemed to have released any individual, non-PAGA wage and hour claims by sole virtue of the execution of this PAGA Settlement and the associated entry of Judgment.

*Id*. at 40.  The settlement provides for notice and delivery of the individual payments to the Aggrieved Employees, and the tax treatment of the settlement amounts.  *Id*. at 28-29, 39-40, 42-43.

**Legal Standard**

California adopted PAGA to allow individual plaintiffs "to bring a civil action to collect civil penalties for Labor Code violations previously only available in enforcement actions initiated by the State's labor law enforcement agencies." *Caliber Bodyworks, Inc. v. Superior Court*, 134 Cal. App. 4th 365, 374 (2005); Cal. Lab. Code § 2699(a); *Urbino v. Orkin Servs. Of Cal., Inc.*, 726 F.3d 1118, 1121 (9th Cir. 2013).  When a plaintiff brings a PAGA action, they do so as the "proxy or agent of the state's labor law enforcement agencies,… who are real parties in interest." *Sakkab v. Luxottica Retail N. Am. Inc.*, 803 F. 3d 425, 435 (9th Cir. 2015); *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2009).

Pursuant to PAGA, an "aggrieved employee" may bring an action for civil penalties for labor code violations on behalf of himself and other current or former employees.  Cal. Lab. Code § 2699(a).  PAGA defines an "aggrieved employee" as "any person who was employed by the

alleged violator and against whom one or more of the alleged violations was committed." *Id.*  A

judgment in a PAGA action "binds all those, including nonparty aggrieved employees, who

would be bound by a judgment in an action brought by the government." *Arias*, 46 Cal. 4th at

986; *See O'Connor v. Uber Technologies, Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016)

("[W]here plaintiffs bring a PAGA representative claim, they take on a special responsibility to

their fellow aggrieved workers who are effectively bound by any judgment.") (citing *Iskanian v.*

*CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 381 (2014)).

The PAGA statute imposes several limits on litigants.  First, because a PAGA action

functions as a "substitute" for an action brought by the state government, a plaintiff seeking relief

under PAGA is limited to the recovery of civil penalties only, rather than damages available

privately through direct or class action claims.  *Iskanian*, 59 Cal. 4th at 381.  Second, to bring an

action under PAGA, an aggrieved employee must first provide written notice to the LWDA as

well as the employer.  Cal. Lab. Code § 2699.3(a)(1).  Third, any civil penalties recovered must

be distributed as follows: 75 percent to the LWDA, and the remaining 25 percent to the aggrieved

employees.  § 2699(i).

Any proposed settlement of PAGA claims must be submitted to the LDWA, and a trial

court must "review and approve" any settlement of PAGA claims.  Cal. Lab. Code § 2699(l)(2);

*see also Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019)

(because settling a PAGA claim "compromises a claim that could otherwise be brought by the

state," it requires that a court "review and approve any settlement of any civil action pursuant to

[PAGA]") (citation omitted).

Although authorities addressing the standard of review for PAGA settlements are limited,

in the class action context, California district courts "have applied a Rule 23-like standard, asking

whether the settlement of the PAGA claims is 'fundamentally fair, adequate, and reasonable in

light of PAGA's policies and purposes.'"  *Haralson*, 383 F. Supp. 3d at 972; *Officers for Justice*

*v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *In re*

*Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008).  However, this is not a class action,

and PAGA claims are intended to serve a decidedly different purpose—namely to protect the

1    public rather than for the benefit of private parties.  *See Arias*, 46 Cal. 4th at 986.  The LWDA

2    has provided some guidance regarding court approval of PAGA settlements.  *O'Connor*, 201 F.

3    Supp. 3d at 1133.  The LDWA indicated:

> It is [] important that when a PAGA claim is settled, the relief provided for under the
> PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to
> benefit the public and, in the context of a class action, the court evaluates whether the
> settlement meets the standards of being "fundamentally fair, reasonable, and adequate"
> with reference to the public policies underlying the PAGA.

8    *Id*. (citation omitted).  Recognizing the distinct issues presented by class actions, this Court is

9    nevertheless persuaded by the LWDA's reasoning in *O'Connor* and therefore adopts its proposed

10   standard in evaluating the PAGA-only settlement agreement now before the court.  Accordingly,

11   the Court will approve a settlement of PAGA claims upon a showing that the settlement terms (1)

12   meet the statutory requirements set forth by PAGA, and (2) are fundamentally fair, reasonable,

13   and adequate in view of PAGA's public policy goals.  *Tenorio v. Gallardo*, No. 1:16-cv-00283-

14   DAD-JLT, 2019 WL 4747949, at *3 (E.D. Cal. Sep. 30, 2019).

15   **Discussion**

16   A. Statutory Requirements

17        The Court finds that the settlement terms meet the statutory requirements set forth by

18   PAGA.  Pursuant to Cal. Lab. Code § 2699(i), PAGA requires that 75 percent of the civil

19   penalties recovered by aggrieved employees be distributed to the LWDA while 25 percent be

20   distributed to the aggrieved employees.  PAGA further requires that the plaintiff provide written

21   notice of the allegations to the LWDA and that the "proposed settlement shall be submitted to the

22   agency at the same time that it is submitted to the court."  Cal. Lab. Code §§ 2699(l)(2);

23   2699.3(a)(1).

24        Here, of the $325,000 gross PAGA settlement sum, $138,833.33 is allotted for attorneys'

25   fees, litigation costs, settlement administration costs, and a representative service award.  (Doc.

26   23 at 11).  75 percent ($139,625.00) of the remaining "General PAGA Penalty Fund" ($186,166)

27   is allotted to the LWDA, and 25 percent ($46,541.67) is allotted to the Aggrieved Employees.  *Id*.

28   These allocations of the "General PAGA Penalty Fund" meet the requirements of § 2699(i).  As

1    to notice, Plaintiff notified the LWDA regarding his allegations on October 12, 2020.  (Doc. 23-1

2    at 15).  The LWDA deferred the prosecution of this action to Plaintiff by failing to respond to

3    Plaintiff's notice within 65 days.  *Id.*; (Doc. 23 at 14).  Plaintiff additionally submitted the

4    settlement to the LWDA on June 7, 2022, concurrent with the filing of this motion.  (Doc. 23-1 at

5    29, 62).  Therefore, the statutory requirements of § 2699 regarding the distribution of penalties

6    and notice have been met.

7    B. Fairness, Adequacy, and Reasonableness of the PAGA Settlement

8            "[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an

9    abandoning of highest hopes.'"  *Officers for Justice*, 688 F.2d at 624 (citations omitted); *see*

10   *Linney v. Cellular Alaska P'Ship*, 151 F.3d 1234, 1242 (9th Cir, 1998) (a proposed settlement

11   may be fair, adequate, and reasonable even though greater recovery might be available to the

12   class members at trial).  When analyzing an agreement, the Court should examine "the complete

13   package taken as a whole," and the proposed settlement is "not to be judged against a

14   hypothetical or speculative measure of what might have been achieved by the negotiators."

15   *Officers for Justice*, 688 F.2d at 628.

16            Here, the Court finds that the settlement terms are fair, reasonable, and adequate in light

17   of the PAGA's policy goals.  The record indicates that Plaintiff and counsel litigated this matter

18   by filing the original complaint in the Superior Court of California for the County of Kern and

19   filed an amended complaint in this Court.  (Doc. 23-1 at 15).  Thereafter, the parties agreed to

20   participate in mediation.  *Id.*

21            In preparation for mediation, the parties exchanged documents and information including

22   Defendant's employee handbook, policies and procedures, personnel files, payroll, and time

23   records.  *Id.*  Plaintiff's counsel analyzed, researched, and investigated the potential issues,

24   interviewed Plaintiff and other alleged Aggrieved Employees.  *Id.* at 15-16.  The parties attended

25   an all-day mediation with an experienced wage-and-hour mediator and engaged in a

26   "comprehensive arm's-length settlement discussion."  *Id.* at 2, 16.  *See Adoma v. Univ. of Phx.,*

27   *Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) ("A settlement following sufficient discovery and

28   genuine arms-length is presumed fair.").  This suggests that the parties arrived at a compromise

based on an understanding of the legal and factual issues surrounding the case. *See Kutzman v. Derrel's Mini Storage, Inc.*, No. 1:18-cv-00755-AWI-JLT, 2020 WL 5909151, at \*9 (E.D. Cal. Oct. 6, 2020).

The PAGA settlement also recognized the risks of further litigation in that Defendant will continue to contest any alleged violations of applicable law and liability for any claims asserted by Plaintiff. (Doc. 23-1 at 16-20). Counsel for Plaintiff acknowledges that even if Plaintiff prevailed on the merits, the PAGA penalty could still be reduced under the Court's discretion. *Id.* at 20; *see Munoz v. Giumarra Vineyards Corp.*, No. 1:09-cv-00703-AWI-JLT, 2017 WL 2665075, at \*9 (E.D. Cal. Jun. 21, 2017) (noting that "[a]pproval of settlement is 'preferable to lengthy and expensive litigation with uncertain results.'"), report and recommendation adopted, No. 1:09-cv-00703-AWI-JLT, 2017 WL 7371175 (E.D. Cal. Nov. 27, 2017).

The total settlement sum of $325,000 is reasonable, given the abovementioned risks involved and given that the record shows that the expected maximum potential penalty was $385,750. (Doc. 23-1 at ¶ 35); *see Officers for Justice*, 688 F.2d at 628 ("[A] cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."). Here, the total settlement sum is only 16 percent lower than the expected total recovery. *Compare Dunleavy v. Nadler (In re Mego Fi. Corp. Sec. Litig.)*, 212 F.3d 454, 458-59 (9th Cir. 2000) (affirming a 16.67 % settlement approval for a weak and risky case), *with Greko v. Diesel U.S.A., Inc.*, No. 10-cv-02576 NC, 2013 WL 1789602, at \*5 (N.D. Cal. April 26, 2013) (the 24% settlement approval was reasonable in light of the uncertainties involved in the litigation). The settlement amount to be distributed to the approximate 191 Aggrieved Employees, is "roughly $243.67 per Aggrieved Employee." (Doc. 23-1 at ¶ 37). This is commensurate with PAGA settlement amounts regularly approved by district courts. *Hartley v. On My Own, Inc.*, No. 2:17-cv-00353-KJM-EFB, 2020 WL 5017608, at \*4 (E.D. Cal. Aug. 2020) (a settlement of $61.18 per PAGA settlement group member to be in line with several other court approved PAGA settlement). Further, the settlement agreement also does not release any Aggrieved Employee's non-PAGA claims for alleged violations of the Labor Code. (Doc. 23 at 26).

Given the amounts allocated to the LWDA and the Aggrieved Employees, the litigation and negotiation involved in achieving the settlement, the potential risks of further litigation, and the fact that Aggrieved Employees are not precluded from bringing actions against Defendant for individual claims, the Court concludes that the parties' PAGA settlement is fundamentally fair, reasonable, and adequate in view of PAGA's public policy goals.

C. Reasonableness of Attorney's Fees

The Court now turns to the attorney's fees provision of the settlement agreement.  Counsel for Plaintiff asks for $108,333.33 in attorney's fees.  (Doc. 23 at 11).  The relevant PAGA provision pertaining to attorney's fees provides: "[a]ny employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs."  Cal. Lab. Code § 2699(g).  The Ninth Circuit and the California Supreme Court both have held that trial courts have the discretion to choose among two different methods for calculating a reasonable attorney's fees award.  *See Laffitte v. Robert Half Int'l Inc.* 1 Cal. 5th 480, 504 (2016) ("The choice of a fee calculation method is generally one within the discretion of the trial court, the goal under either the percentage or lodestar approach being the award of a reasonable fee to compensate counsel for their efforts."); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 ("Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method").

The typical range of acceptable attorney's fees in the Ninth Circuit is 20 percent to 30 percent of the total settlement value, with 25 percent considered the benchmark.  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942.  Counsel for Plaintiff seeks attorney's fees pursuant to the percentage of the common fund method and requests the Court approve a fee award of one-third of the settlement amount.  (Doc. 23 at 27-30).  Because Counsel for Plaintiff asks the Court to depart from the "benchmark" of 25 percent, the Court must determine whether the requested percentage is reasonable.  *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).  *See Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1056 (9th Cir. 2019) (concluding that district court should have "explained why attorneys' fees of 31.6% ($950,000 out of $3 million …) or more were

1   justified" for purposes of performing the lodestar cross-check using a percentage of the total

2   class).

3        To evaluate whether the requested percentage is reasonable, the Ninth Circuit has

4   favorably commended a district court's consideration of five factors: (1) the results achieved, (2)

5   the risk of further litigation, (3) the skill required of plaintiff's counsel and the quality of work

6   performed, (4) the contingent nature of this action, and (5) awards granted in similar cases.

7   *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002); *Lafitte v. Robert Half*

8   *Internat. Inc.*, 1 Cal. 5th 480, 504-05 (2016) (endorsing similar factors in class action context).

9   The Court will address each factor in turn.

10      1.  Results Achieved

11        "The overall result and benefit to the class from the litigation is the most critical factor in

12   granting a fee award." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007).  In

13   this case, Plaintiff recovered 84 percent of the estimated potential recovery.  *See* (Doc. 23-1 at ¶

14   35).  Moreover, the average individual settlement share is estimated to be "roughly $243.67 per

15   Aggrieved Employee." *Id*. at ¶ 37.  This provides moderate monetary relief to the alleged

16   Aggrieved Employees.  Given the monetary relief obtained, this factor favors an increase over the

17   25 percent benchmark.

18      2.  Risk of Litigation

19        The risk that further litigation might result in no recovery is a significant factor in

20   assessing the fairness and reasonableness of an award of attorney's fees.  *See Vizcaino*, 290 F.3d

21   at 1048 ("Risk is a relevant circumstance" in determining a fee award in a common fund case).

22   Counsel for Plaintiff asserts there was a risk that Plaintiff would not prevail and even if they had

23   won there could be a potential for substantial delays to realizing any recovery.  (Doc. 23-1 at ¶

24   41; Doc. 23 at 28).  The Court agrees that Counsel for Plaintiff would have faced significant

25   opposition from Defendant if a settlement had not been reached.  *See* (Doc. 23-1 at ¶¶ 19-33).

26   However, the risks identified by Counsel for Plaintiff are not unique to this action, rather these

27   risks generally apply to PAGA litigation.  *Compare Lusk v. Five Guys Enter. LLC*, No. 1:17-cv-

28   00762-JLT-EPG, 2023 WL 4134656, at *24 (E.D. Cal. Jun. 2023) (the risks identified by class

counsel generally applied to class action litigation).  Therefore, this factor supports an award equal to the 25 percent benchmark.  *See id.*

    3.  Skills Required and the Quality of Work

        The Court also considers the skills required to prosecute and manage this litigation, as well as counsel's overall performance.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (the complexity of issues and skills required may support a departure from the benchmark fee award).  Counsel for Plaintiff is an experienced litigator and has represented thousands of employees in wage and hour class actions, and other employment-related matters. (Doc. 23-1 at ¶¶ 7-9).  Counsel for Plaintiff has "served as lead counsel or co-lead counsel in approximately sixty wage-and-hour class actions and PAGA representative actions" that have been granted preliminary and final approval.  *See id.* at ¶ 10 (citing cases).

        Counsel for Plaintiff asserts he and his firm have spent a considerable amount of time extensively investigating, researching, and litigating this matter, over 108 hours.  *Id.* at ¶¶ 46, 51-52.  However, Counsel for Plaintiff has not identified any evidence that he, or his firm, were precluded from other work because of this action.  Indeed, Counsel for Plaintiff notes along with this action he also is lead or co-lead counsel or PAGA counsel on approximately twenty-five class action and PAGA cases pending in California state and federal courts.  *Id.* at ¶ 10.  The pleadings do not support the conclusion that the time and labor required for this action was burdensome. *Cf. Wise v. Ulta Salon, Cosmetics & Fragrance, Inc.*, No. 1:17-cv-00853-DAD-EPG, 2020 WL 1492672, at *8 (E.D. Cal. Mar. 17, 2020) ("counsel devoted approximately 1,375 hours and $44,825.32 in out-of-pocket expenses to litigating the case for almost four years.").

        The Court finds the overall experience of Counsel and his firm undoubtedly benefited Plaintiff and the Aggrieved Employees in securing a settlement.  However, Counsel for Plaintiff has not identified any complex issues faced in this matter.  Instead, Plaintiff filed a first amended complaint on January 22, 2021.  (Doc. 5); (Doc. 23-1 at ¶ 15).  Thereafter, the Parties agreed to participate in private mediation.  *Id.* at ¶ 10.  The parties reached the proposed settlement in a private mediation without formal discovery or motion practice.  *Id.* at ¶¶ 16-18.  Counsel for Plaintiff has presented no argument that there was anything more complex or difficult about this

1   case than any other action asserting PAGA claims.  *See Monterrubio v. Best Buy Stores, L.P.*, 291

2   F.R.D. 443, 458 (E.D. Cal. 2013) (declining to depart from the benchmark as the "case is, quite

3   simply a garden-variety wage and hour class action").  Accordingly, this factor supports an award

4   equal to the 25 percent benchmark.

5        4.   Contingent Nature of this Action

6        Counsel for Plaintiff argues the contingent nature of his representation supports a 33

7   percent fee award.  (Doc. 23 at 32-33).  Counsel argues there was a prospect of enormous cost

8   inherent in this litigation including "the risk of Defendant prevailing on the merits; the risk that a

9   court may not award the damages or penalties sought; difficulties in establishing bad faith; and

10  the difficulty in proving a sustainable injury."  *Id.*  Counsel asserts the risk justified the requested

11  fee award.  *Id.* at 33.

12       The Ninth Circuit has suggested the distinction between a contingency arrangement and a

13  fixed fee arrangement alone does not merit an enhancement from the benchmark.  *Bluetooth*, 654

14  F.3d at 942 n.7 ("whether the fee was fixed or contingent" is "no longer valid" as a factor in

15  evaluating reasonable fees) (citation omitted); *contra In re Online DVD-Rental Antitrust*

16  *Litigation*, 779 F.3d 934, 954-55 (9th Cir. 2015) (finding the contingent nature of litigation

17  remains a relevant factor to evaluate a request from the common fund); *Clayton v. Knight*

18  *Transp.*, No. 1:11-cv-00735-SAB, 2013 WL 5877213, at *8 (E.D. Cal. Oct. 30, 2013) (the

19  contingent nature of a fee is an important factor in determining the fee award but risks that "are

20  no greater than that associated with any other wage and hour action and no extraordinary

21  circumstances exist that would support an increase from the 25% benchmark").  Counsel for

22  Plaintiff does not identify any unusual risk with the contingent nature of their fee in this action.

23  Accordingly, this factor supports an award equal to the 25 percent benchmark.

24       5.   Awards Made in Similar Cases

25       In support of his fee request, Counsel for Plaintiff argues the fees requested "falls [well

26  within] the norms accepted by state and federal courts in California in comparable wage and hour

27  actions."  *See* (Doc. 23 at 29-30).  Counsel lists a number of cases where federal courts in

28  California awarded attorneys' fees on one-third of the gross settlement amount.  *Id.*  However,

13

1   Counsel for Plaintiff has not provided any analysis as to how these cases are similar to the matter

2   now pending.  Counsel only asserts that federal courts in California have and can award

3   attorneys' fees in the amount of one-third of the gross settlement amount.  "The Court declines to

4   manufacture arguments on behalf of [Counsel]."  *Martinez v. Semi-Tropic Coop. Gin*, No. 1:19-

5   cv-01581-JLT-CDB, 2023 WL 3569906, at *28 (E.D. Cal. May 19, 2023).  Accordingly, this

6   factor supports an award equal to the 25 percent benchmark.

7       6.   Lodestar crosscheck and market rate

8       The Court may also perform a lodestar cross-check to confirm that requested attorneys'

9   fees are reasonable.  *Indirect Purchaser Class v. Erwin (In re Optical Disk Drive Prods. Antitrust*

10  *Litig.)*, 959 F.3d 922, 933 (9th Cir. 2020).  The lodestar method calculates attorney fees "by

11  multiplying the number of hours reasonably expended by counsel on the particular matter times a

12  reasonably hourly rate."  *Florida v. Dunne*, 915 F.2d 542, 545 n.3 (9th Cir. 1990) (citing *Hensley*

13  *v. Eckerhart*, 461 U.S. 424, 433 (1983)).  The product of this computation, the "lodestar" amount,

14  yields a presumptively reasonable fee.  *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th

15  Cir. 2013).  Next, the Court may adjust the lodestar upward or downward using a "multiplier"

16  considering factors adopted by the Ninth Circuit:

17      (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3)
18      the skill requisite to perform the legal service properly, (4) the preclusion of other
        employment by the attorney due to acceptance of the case, (5) the customary fee, (6)
19      whether the fee is fixed or contingent, (7) time limitations imposed by the client or the
        circumstances, (8) the amount involved and the results obtained, (9) the experience,
20      reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the
        nature and length of the professional relationship with the client, and (12) awards in
21      similar cases.[3]

22

23  *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

24      In general, the first step in determining the lodestar is to assess whether the number of

25  hours expended was reasonable.  *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000);

26  *Lafitte*, 1 Cal. 5th at 489.  The Court does not necessarily require a "minute-by-minute

27          [3] The Ninth Circuit has determined the "desirability" of a case is no longer a relevant

28  factor.  *Resurrection Bay Conservation Alliance v. City of Seward*, 640 F.3d 1087, 1095 n.5 (9th
    Cir. 2011) (citations omitted).

breakdown" of counsel's hours. *See Beltran v. Spices*, No. 1:18-cv-01676-JLT-SAB, 2023 WL 1467118, at *28 (E.D. Cal. Feb. 2, 2023), *F&R adopted in relevant part*, 2023 WL 5817577 (Sept. 8, 2023); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 451 (E.D. Cal. 2013) (the Court is not required to perform an "exhaustive cataloging and review of counsel's hours"). Rather, "plaintiff's counsel can meet his burden—although just barely—by simply listing his hours and identify[ing] the general subject matter of his time expenditures." *Fischer*, 214 F.3d at 1121. Here, Counsel for Plaintiff has provided a chart of the hours his firm worked, 108.1 total. (Doc. 23-1 at ¶ 51). Counsel did not provide the Court with a breakdown of total hours by category. Instead, Counsel only proffered a total amount of hours expended and a general description of the tasks. *Id.* at ¶ 52. The Court is unable to determine the reasonableness of the hours proffered to have been expended by Counsel and his firm, particularly for purposes of a lodestar check. *See Lafitte*, 1 Cal. 5th at 505 ("trial courts retain the discretion to consider detailed timesheets as part of a lodestar calculation, even when performed as a cross-check on a percentage calculation"). It is unclear if the 108.1 hours proffered by Counsel include unnecessary tasks, duplicative work, or clerical tasks.

Next, the Court must determine whether the hourly rates are reasonable to calculate the lodestar. *Dunne*, 915 2d at 545 n.3. The Supreme Court has explained attorney fees are to be calculated with "the prevailing market rates in the relevant community." *Blum v. Stenson*, 456 U.S. 886, 895-96, n.11 (1984). In general, the "relevant community" for purposes of determining the prevailing market rate is the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Thus, when a case is filed in the Eastern District of California, this District "is the appropriate forum to establish the lodestar hourly rate…" *Jadwin v. County of Kern*, 767 F.Supp.2d 1069, 1129 (E.D. Cal. 2011).

The fee applicant bears the burden to establish that the requested rates are commensurate "with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11. The applicants meet this burden by producing "satisfactory evidence—in addition to the attorney's affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of

1    reasonably comparable skill, experience and reputation." *Id*.; *see Chaudhry v. City of Los*

2    *Angeles*, 751 F.3d 1096, 1110-11 (9th Cir. 2014) ("Affidavits of the plaintiffs' attorney[s] and

3    other attorneys regarding prevailing fees in the community ... are satisfactory evidence of the

4    prevailing market rate").

5         Here, Counsel for Plaintiff applied the following hourly rates: (1) $500.00 for Jonathan

6    Melmed, Esq., 10 years' experience; (2) $525.00 for Kyle D. Smith, Esq., 11 years' experience;

7    (3) 381.00 for Joanne H. Kim, Esq. 0.5 years' experience; and (4) $205.00 for Lorrie Gutierrez,

8    Paralegal, 6 years' experience.  (Doc. 23-1 at ¶ 51).  Counsel asserts the rates he requests are

9    reasonable, similar, and competitive in the field of employment law within southern California.

10   *Id*. at ¶ 57.

11        It is Counsel's burden to establish that the requested rates are commensurate with the

12   market rate within the Eastern District.  *Blum*, 465 U.S. at 895 n.11.  Counsel has failed to carry

13   his burden.  Moreover, it appears the requested rates are higher than those previously accepted by

14   the Eastern District as reasonable.  *E.g., Martinez*, No. 1:19-cv-01581-JLT-CDB, 2023 WL

15   3569906, at *34 (awarding $525.00 per hour to attorney with twenty years or more of experience,

16   $300.00 per hour for around seven years of experience, and $200.00 for two years or less of

17   experience); *Lusk*, No. 1:17-cv-00762-JLT-EPG, 2023 WL 4134656, at *29 (awarding $525.00

18   per hour to attorneys with twenty years or more of experience, $450.00 per hour to an attorney

19   with thirteen years of experience, $400.00 per hour to an attorney with eight years of experience,

20   $300.00 per hour for attorneys with approximately five years of experience, and $200.00 per hour

21   for attorneys with less than two years of experience); *Englert v. City of Merced*, No. 1:18-cv-

22   01239-NONE-SAB, 2020 WL 2215749, at *13 (E.D. Cal. May 7, 2020) (finding a rate of

23   $450.00 per hour for a partner with nineteen years of experience, $400.00 per hour for a senior

24   associate attorney with an unspecified amount of years of experience, and a rate of $325.00 per

25   hour for an associate with eight years of experience to be reasonable); *Garcia v. FCA US LLC*,

26   No. 1:16-cv-00730-JLT, 2018 WL 1184949, at *6 (E.D. Cal. Mar. 7, 2018) (awarding $400.00

27   per hour to attorney with approximately thirty years of experience, $300.00 to attorney with

28   fifteen years of experience, $250.00 to attorney with ten years of experience, $225.00 to attorney

1    with five years of experience, and $175.00 to attorney with less than five years of experience);

2    *Schmidt v. City of Modesto*, No. 1:17-cv-01411-DAD-MJS, 2018 WL 6593362, at *6 (E.D. Cal.

3    Dec. 14, 2018) (paralegal rates within the Eastern District range from $75.00 to approximately

4    $150.00 per hour, depending on experience); *In re Taco Bell Wage & Hour Actions*, 222 F. Supp.

5    3d 813, 839 (E.D. Cal. 2016) (attorneys with experience of twenty or more years of experience

6    are awarded $350.00 to $400.00 per hour).

7          In summary, the Court will provide Counsel for Plaintiff the opportunity to provide

8    supplemental briefing to clarify why an upward departure of the 25 percent benchmark is

9    appropriate in this action.  Further, Counsel may provide supplemental briefing to allow the Court

10    to conduct a lodestar crosscheck.

11    D. Requests for Costs

12        1.  Litigation Costs

13          "There is no doubt that an attorney who has created a common fund for the benefit of [a]

14    class is entitled to reimbursement of reasonable litigation expenses from that fund."  *Ontiveros v.*

15    *Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (citation omitted).  Attorneys may recover

16    reasonable expenses that would typically be billed to paying clients in non-contingency matters.

17    *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *Munoz v. Chipotle Mexican Grill, Inc.*, 238

18    Cal. App. 4th 291, 311 (2015) ("A prevailing PAGA plaintiff may recover his or her attorney fees

19    and costs as well.").

20          The Settlement Agreement authorizes Counsel for Plaintiff to recover their actual

21    litigation costs of up to $20,000.  (Doc. 23-1 at 37-38).  Counsel for Plaintiff seeks litigation

22    expenses in the amount of $11,090.04.  *Id*. at ¶ 59.  Counsel notes these costs do not include

23    anticipated costs in connection with shepherding the settlement through funding and

24    disbursement.  *Id*.  The itemized costs include mailing and filing fees, expert costs, and mediation

25    fees.  *Id*.  "Such costs are routinely reimbursed in these types of cases."  *Alvarado v. Nederend*,

26    No. 1:08-cv-01099-OWW-DLB, 2011 WL 1883188, at *10 (E.D. Cal. May 17, 2011) (citation

27    omitted).  Because the costs requested are reasonable and do not exceed the amount authorized,

28    the request for litigation costs in the amount of $11,090.04 will be granted.

1      2.   Costs of Settlement Administration

2         Plaintiff asks the Court to appoint ILYM Group, Inc. as settlement administrator and

3   approve costs of approximately $3,000.00.  (Doc. 23-3 at 3).  This estimate is ultimately

4   reasonable given that this action is brought on behalf of 191 individuals.  *See Campbell v. FMC*

5   *Techs. Surface Integrated SVCS*, No. 1:20-cv-00901-CDB, 2022 WL 17555517, at *12 (E.D. Cal.

6   Dec. 9, 2022) (finding settlement administration costs of $1,514.23 reasonable to manage

7   disbursement to 15 individuals).  Thus, the Court will appoint ILYM Group, Inc. as settlement

8   administrator and finds the estimated administration costs are reasonable.

9      3.   Representative Award

10        Plaintiff requests an enhancement award in the amount of $7,500.00.  (Doc. 23 at 34).

11  Courts have generally found that $7,500.00 incentive payments are reasonable.  *Monterrubio*, 291

12  F.R.D. at 462. A representative may "receive a share of class recovery above and beyond [his]

13  individual claim" with a service payment, also known as an "incentive payment."  *China*

14  *Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1811 n. 7 (2018); *see Rodriguez v. West Pub'g Corp.*, 563

15  F.3d 948, 958 (9th 2009) ("Incentive awards are fairly typical in class action cases.") (citations

16  omitted).  However, the decision to approve such an award is a matter within the court's

17  discretion.  *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 463 (9th Cir.

18  2000).  Incentive awards are meant to compensate representatives for work done on behalf of the

19  class, to make up for financial or reputational risk undertaken in bringing the action, and to

20  recognize their willingness to act as a private attorney general.  *Rodriguez*, 563 F.3d 948 at 958-

21  59.

22        The Ninth Circuit has emphasized that "district courts must be vigilant in scrutinizing all

23  incentive awards."  *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1165 (9th Cir. 2013).  In

24  evaluating a request for an incentive payment to a representative, the Court must consider "'the

25  actions the plaintiff has taken to protect the interests of the class, the degree to which the class has

26  benefited from those actions, the amount of time and effort the plaintiff expended in pursuing the

27  litigation,' and any financial or reputational risks the plaintiff faced."  *Named Plaintiffs &*

28

18

1    *Settlement Class Members v. Feldman (In re Apple Inc. Device Performance Litig.)*, 50 F.4th 769,

2    786 (9th Cir. 2022) (quoting *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1057 (9th Cir. 2019)).

3           a. Time Expended

4           The Eastern District has awarded service payments for "'substantial efforts taken as a

5    class representative' when the plaintiff has undertaken at least 30 to 40 hours of work."  *Greer v.*

6    *Dick's Sporting Goods, Inc.*, No. 2:15-cv-01063-KJM-CKD, 2020 WL 5535399, at *4 (E.D. Cal.

7    Sep. 15, 2020).  Here, Plaintiff asserts he regularly conferred with his attorneys, actively

8    participated in the prosecution of his claims, remained available to assist his attorneys during

9    settlement negotiations, and reviewed and evaluated the settlement.  (Doc. 23-2 at ¶¶ 6-8).

10           Plaintiff purports he spent a "significant amount of time" conferring and working with his

11   attorneys on this action.  *Id*. at ¶ 9.  However, Plaintiff has provided no information related to the

12   actual number of hours he spent working with his attorneys on this action, or even an estimate of

13   the number of hours spent.  Accordingly, this factor does not support an enhancement award.

14           b. Action taken for the benefit of the Aggrieved Employees and California

15           Counsel for Plaintiff notes "Plaintiff's efforts were instrumental in securing the favorable

16   terms of the Settlement Agreement."  (Doc. 23-1 at ¶ 62).  Plaintiff reports he provided his

17   attorneys with information about his employment, reviewed documents, attempted to locate

18   witnesses, and educated his attorneys on the intricacies and details of Defendant's unique

19   business.  (Doc. 23-2 at ¶¶ 6-8).  It appears Plaintiff did not participate in settlement negotiations

20   but remained available.  *Id*. at ¶ 8; *Cf. Lusk*, No. 1:17-cv-00762-JLT-EPG, 2023 WL 4134656, at

21   *32 (plaintiff was deposed and participated in the full-day mediation).  In light of Plaintiff's

22   representations, it appears Plaintiff's actions benefited the Aggrieved Employees, who will

23   receive an average payment of $243.67.

24           Further, incentive payments may recognize a named plaintiff's "willingness to act as a

25   private attorney general."  *Rodriguez*, 563 F.3d at 958-59.  Here, Plaintiff acted as a private

26   attorney general, which will result in a payment of $139,625.00 to the LWDA.  (Doc. 23 at 11).

27   Thus, this factor supports an enhancement award.

28

19

1

2          c. Reputational risk

3          Counsel for Plaintiff argues that Plaintiff faces a potential risk that future employers will

find Plaintiff's name associated with this lawsuit.  (Doc. 23-1 at ¶ 62).  Counsel's claim is

unpersuasive.  Any difficulty obtaining future employment due to Plaintiff's status as a named

plaintiff lacks evidentiary support and is simply speculative.  A "trial court is not bound to, and

should not, accept conclusory statements about 'potential stigma' and 'potential risk,' in the

absence of supporting evidence."  *Wilson v. Tesla, Inc.*, 833 Fed. App'x 59, 62 (9th Cir. 2020)

(quoting *Clark v. Am. Residential Servs. LLC*, 175 Cal. App. 4th 785, 805 (2009)).  Accordingly,

this factor does not support an enhancement award.

          d. Financial Risk

          Counsel for Plaintiff contends that Plaintiff undertook the risk of having to pay

Defendant's costs if Plaintiff did not prevail.  (Doc. 23-1 at ¶ 62).  Courts in the Ninth Circuit

have acknowledged such a financial risk supports an enhancement award.  *Vasquez v. Coast*

*Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (plaintiff undertook the financial risk that, in the event

of a judgment in favor of defendant, plaintiff could have been personally responsible for any costs

awarded in favor of defendant); *Wilson v. Metals USA, Inc.*, No. 2:12-cv-00568-KJM-DB, 2021

WL 516585, at *9 (E.D. Cal. Feb. 11, 2021).  Additionally, Counsel for Plaintiff notes Plaintiff

executed a general release that far exceeds the scope of the claims being released by the

Aggrieved Employees.  (Doc. 23-1 at ¶ 62).  The Court takes this sacrifice into account when

scrutinizing an enhancement award.  *See Ontiveros*, 303 F.R.D. at 375 (citing *Rodriguez*, 563

F.3d at 958-59).  Thus, this factor supports an enhancement award.

          Considering the factors set forth above including the actions and financial risks

undertaken by Plaintiff, a $7,500.00 enhancement award may be warranted.  However, without

additional information regarding the time Plaintiff spent on this action, the Court is presently

unable to evaluate the reasonableness of the requested award.

**Conclusion and Order**

In summary, the Court concludes that the parties' PAGA settlement is fundamentally fair, reasonable, and adequate in view of PAGA's public policy goals.  The Court finds Plaintiff's requests for litigation costs and settlement administration costs also are reasonable.  The Court presently is unable to determine whether Plaintiff's request for attorney's fees and enhancement award were reasonable.

Accordingly, IT IS HEREBY ORDERED, Plaintiff's motion for approval of settlement shall be held in abeyance for **14 days** pending his filing of any supplemental briefing he may submit to address the aforementioned deficiencies in his request for attorneys' fees and enhancement award.

For the reasons set forth herein, in the event Plaintiff declines to timely file supplemental briefing, the Court intends to approve an award of attorney's fees in the amount of 25% and an enhancement award in the amount of $5,000.

IT IS SO ORDERED.

Dated:   **September 14, 2023**

UNITED STATES MAGISTRATE JUDGE